UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NICOLE HUDSON,

    Plaintiff,

v.

CASE NO.

FLORIDA DEPARTMENT OF
CORRECTIONS,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, NICOLE HUDSON (hereafter, "Plaintiff"), by and through her undersigned counsel, and hereby files this Complaint against Defendant, FLORIDA DEPARTMENT OF CORRECTIONS (hereafter, "Defendant" or "DOC") and alleges as follows:

1. This action arises, in part, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended by the Civil Rights Act of 1991, the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12111 *et seq.*, and the Florida Worker's Compensation Act (FWCA), F.S. §440.205. This Court has jurisdiction to grant relief pursuant to 28 U.S.C. §§ 1331, 1343 (3) and (4) and 29 U.S.C. § 1001*et seq.* This Court has jurisdiction over all state law claims pursuant to 42 U.S.C. §1331, §1367.

2. Venue is proper in the Fort Myers Division of the Middle District of Florida pursuant to 42 U.S.C. §2000(e)-5(f)(3) and 28 U.S.C. §1391(b),(c) because the unlawful employment practices were committed within this judicial district. All facts and circumstances arising from this dispute took place in Charlotte County, Florida.

3. Plaintiff is an individual who resided in Charlotte County, Florida, during the time of her employment with Defendant and all times material herein. She is a female, and is protected

from disparate treatment on the basis of sex and retaliation under Title VII. At all times material herein, Plaintiff was employed by Defendant.

4. Defendant is an "employer" as defined by 42 U.S.C. § 2000e(b) and Florida Statutes § 760.02(7) because it is engaged in an industry affecting commerce and has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

## ADMINISTRATIVE PREREQUISITES

5. Plaintiff timely dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sexual harassment and retaliation, a copy of which is attached hereto and incorporated herein as Exhibit "A."

6. This action is filed within ninety (90) days of Plaintiff's receipt of her Notice of Right to Sue, dated October 11, 2018, in reference to EEOC Charge Number 510-2018-04950, from the U.S. Equal Employment Opportunity Commission, a copy of which is attached hereto and incorporated herein as Exhibit "B."

## GENERAL ALLEGATIONS

7. The Plaintiff was hired in July of 2017 as a Corrections Officer at the Charlotte County Correctional Institute operated by the DOC.

8. From the beginning, the Plaintiff and other female Corrections Officers were subject to disparate treatment on the basis of their sex or gender.

9. Female Corrections Officers were treated with derision and informed that need to toughen up or they would not be able to handle the Corrections Officer position. It was implied that the couldn't handle the position on the basis of their sex or gender because similar comments were not directed to their male counterparts. Unlike their male counterparts, female Corrections

Officers including the Plaintiff were subject to little to no training or assistance from employees or agents of the DOC.

10. This resulted in both a more difficult acclimation period for female Corrections Officers and placed these females in danger as they were not provided proper training or even, at times equipment.

11. To insure the female officers were up the challenge, female Corrections Officers were placed in dangerous positions, sometimes in violation of standing orders. Importantly, male Corrections Officers were not placed in these same unsafe or compromising positions. Essentially, female Corrections Officers were hazed by their male counterparts in a misogynistic, belittling manner.

12. On one occasion, the Plaintiff was instructed to follow a male Sargent who lead herself and Lina Winford around on the grounds. After a few minutes, they realized that the Sergeant was playing a game similar to "Simon Says" when the Sargent began laughing without cause. Further, after laughing, the brand new female Corrections Officers were left alone with inmates. This is prior to any formal instruction or orientation.

13. Female Corrections Officers including the Plaintiff were subject to repeated and consistent sexual harassment from their fellow Corrections Officers. These statements and suggestive comments, innuendos, questions about Plaintiff's sexual preferences, undergarments, comments about her looks or body.

14. The Plaintiff and other female Corrections Officers were subject to personal advances from male Corrections Officers. Male Corrections Officers would show the Plaintiff where the best places to have sexual intercourse/exchange favors were in the Compound.

15. Further, a group of male employees created a list/contest wherein they attempted to be the first to have sexual intercourse with the new female guards including the Plaintiff. There were also

tasks to see who could get the Plaintiff's phone number first and text messaged the Plaintiff in an attempt to make good contest/bet.

16. On or about October 1, 2017, the Plaintiff suffered a workplace injury while conducting her rounds. As the Plaintiff was turning around, she slipped on a newly painted area and injured her knees and may have suffered a concussion. To be clear, the Plaintiff suffered a torn meniscus in both knees and may have lost consciousness (briefly) while a female officer, alone and vulnerable, in an all male corrections institute. The Plaintiff's Sargent witnessed her fall and injury, but disregarded her safety and went back to watching Netflix.

17. The Plaintiff reported the incident to her Sergeant, but the Sergeant refused to write it up.

18. The next day, the Plaintiff spoke with her Lieutenant and reported the injury again. The Lieutenant replied, "What the d*** - why didn't you report it." After the Plaintiff explained her discussion with the Sargent, the Lieutenant yelled "Oh f***, Hudson fell in the quad, now we all could lose our jobs."

19. After that, Hudson was told to go to an assignment. On route, her Sergeant charged at the Plaintiff screaming that he could be fired asking why she informed the Lieutenant about his failure to report the incident.

20. After the claim was filed, worker's compensation and their recommended physician placed her on alternative duty because of the injury to her knees which inhibited her ability to go up and down stairs, stand for extended periods, sit for extended periods, or otherwise perform her duties as a Corrections Officer.

21. The Plaintiff was placed in the main hub of the prison performing various tasks while on alternative duty.

22. The Plaintiff was severely harassed after her injury. Essentially, she became a target of increased sexual harassment and continued belligerent, demeaning comments on the basis of her sex, her injury and her alternative duty assignment.

23. The Plaintiff reported these incidents to the head of Human Resources who told her to speak up and "use [ the Plaintiff's] voice" and otherwise provided no assistance whatsoever.

24. Within a couple days of reporting the increased harassment, the Plaintiff was brought into Warden's office and given a letter stating that she would be terminated if she didn't have documentation of why she could not be at work.

25. On one occasion, the Plaintiff was assigned to make a trip to the Everglades in a marked DOC van to bring Dade County Corrections Officers gasoline. She was assigned no firearm, a cellphone with five (5%) percent battery power, no charger, and no partner. It's important to remember that she was still on light duty, was wearing two full knee braces, was on a restriction for driving long distances, and was uncertified to be a Corrections Officer. When the Plaintiff arrived in Dade County, the two Corrections Officers were stunned because the Plaintiff was out of uniform, without a partner and placed in an unsafe situation. They asked the Plaintiff who she ticked off to be placed in such a dangerous situation. DOC vans are known to be targeted on alligator alley where she was driving without a partner, means of communication or a firearm.

26. On one occasion, the Plaintiff was assaulted by three (3) male Corrections Officers who returned from rounds of the outside of the grounds. The three (3) Corrections Officers took an excessive amount of time returning from the rounds and returned reeking of alcohol. It is unclear whether they were using other illicit drugs as well, but they were clearly intoxicated. The Plaintiff asked them to leave so that she could hear the inmates phone conversations she was monitoring. One Corrections Officers grabbed the Plaintiff's hand which was on the

mouse and yelled "shut up bitch." Further, he shoved the Plaintiff while sitting in the chair into the wall. The Plaintiff then said don't do that and asked them to go to another area of the room. Then he said, "You are a f******* b**** aren't you." The Plaintiff screamed back get out. The three heard the other door opening from the other side and asked why the Plaintiff was yelling. She said they put their hands on me and I am going to report them for the intoxication and assault. The other Sargent said, "what do you think the backlash is going to be if you report it?"

27. The verbal abuse and intimidation continued, although that was the only physical assault. For example, the Plaintiff also noticed that someone had hammered a nail into her tires on several occasions. Most terrifyingly, she found a pair of inmate's shoes in her yard. These little actions were clear and deliberate intimidation tactics to force the Plaintiff to resign or simply terrify the Plaintiff.

28. The Plaintiff became paranoid and concerned that the Corrections Officers involved in the incident may retaliate against her by coming to her home and harm herself or her son.

29. During her visit with her physician, the physician witnessed the Plaintiff exhibit signs of post-traumatic stress disorder. The Plaintiff revealed the details of her anxiety, stress, depression, and fear for her life and safety from the incidents and conduct of the DOC and its agents and employees. The Plaintiff had suffered an emotional breakdown and she was, for the reasons discussed above, encouraged not to return to work considering her severe PTSD.

30. The Plaintiff provided her Notice of Constructive Discharge on or about February 13, 2018.

31. The Plaintiff continues to suffer severe post-traumatic stress, violent nightmares, and severe paranoia related to her fear for her safety arising from the retaliatory actions of the DOC and its agents and employees.

32. The Plaintiff has retained the Malatesta Law Office to assist to represent her in this action and promised to pay reasonable attorney fees associated with such representation.

## COUNT I – GENDER/SEX BASED DISCRIMINATION (HOSTILE WORK ENVIRONMENT)

33. Plaintiff realleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 - 15, 22 - 32 of this Complaint.

34. As discussed above, Plaintiff and other female employees were willfully and maliciously discriminated against by the Defendant on the basis of her sex/gender, female, in the terms, conditions and benefits of her employment including, training, promotions, assignments of job duties, work hours, time off, work conditions, overtime, discipline, and dress code.

35. As set out above, Defendant subjected Plaintiff to a hostile work environment based on her sex/gender, female, and the conduct of Defendant was so severe or pervasive as to create a hostile working environment for the Plaintiff.

36. The Defendant's conduct as described above was so severe or pervasive as to create a hostile working environment which caused Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

37. The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, injunctive relief, and compensatory damages and a declaratory judgment is her only means of securing adequate relief.

38. Plaintiff is suffering and will continue to suffer irreparable injury from the Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

WHEREFORE, Plaintiff, NICOLE HUDSON, respectfully demands judgment against Defendant, FLORIDA DEPARTMENT OF CORRECTIONS, compensatory damages, attorneys' fees and costs, prejudgment interest and such other relief as this Court deems just and proper.

## COUNT II – SEXUAL HARASSMENT (QUID PRO QUO & HOSTILE WORK ENVIRONMENT)

39. Plaintiff realleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 - 15, 22 - 32 of this Complaint.

40. The actions of Defendant by and through the conducts of its agents, more particularly described in the General Allegations section herein, constituted unlawful quid pro quo sexual harassment and created a sexually hostile work environment. The Defendant tolerated and condoned this discriminatory and hostile environment that was inflicted upon female workers in general, and upon the Plaintiff in particular.

41. By creating a sexually hostile and offensive work environment for Plaintiff, Defendant's agents, employees, managers and/or supervisors discriminated against her with respect to a "term, condition, or privilege" of employment under 42 U.S.C. 2000e-2(a)(1). The hostile workplace negatively affected her psychological and physical well-being.

42. The conduct of Defendant, by and through the conduct of its agents, employees, managers and supervisors, and its failure to investigate and to take prompt, remedial action to prevent continued harassment of Plaintiff and other female employees, deprived Plaintiff of her statutory rights under 42 U.S.C. § 2000e *et seq.*

43. The actions of Defendant, by and through its agents, employees, managers and supervisors, were willful, wanton, intentional and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to compensatory and punitive damages to punish Defendant for its actions and to deter it and others from such action in the future.

44. The actions of Defendant, by and through its agents, employees, managers and supervisors, make reinstatement ineffective as a make-whole remedy, entitling Plaintiff to front pay in lieu of reinstatement.

45. As a direct, proximate and foreseeable result of Defendant's actions, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience and mental anguish, loss of enjoyment in life, loss of dignity, emotional distress, humiliation and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, NICOLE HUDSON, respectfully demands judgment against Defendant, FLORIDA DEPARTMENT OF CORRECTIONS, compensatory damages, attorneys' fees and costs, prejudgment interest and such other relief as this Court deems just and proper.

## **COUNT III – ADA DISCRIMINATION (RETALIATION)**

46. Plaintiff realleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 - 7, 16 - 32 of this Complaint.

47. Defendant is a "person" within the meaning of §101(7) of the ADA, 42 USC § 1211(7), and §701 of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, in that, the definition includes one or more individuals, … , partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations…

48. At all times relevant hereto, Plaintiff is an individual with a "disability" as that term is defined in Section 3(2) of the ADA, 42 USC § 12102, which provides "disability" means a physical or mental impairment that substantially limits one or more major life activities of such individual… Specifically, Plaintiff suffered from a torn meniscus which substantially limited one or more of her major life activities, including without limitation her ability to walk, climb stairs, ambulate, and remain standing or sitting for extended periods of time.

49. Plaintiff is a qualified individual with a disability within the meaning of Section 101(8) of the ADA, 42 USC § 12111(8), in that Plaintiff is an individual with a disability, who, with a reasonable accommodation, can perform while on "alternative duty."

50. After receiving her "alternative duty" assignment as a reasonable accommodation, the Defendant, its agents and employees began harassing the Plaintiff as discussed more fully in the general allegations.

51. Defendant's retaliatory harassment and intimidation of Plaintiff based on her handicap has caused, continues to cause and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

52. As a direct, proximate and foreseeable result of Defendant's actions, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience and mental anguish, loss of enjoyment in life, loss of dignity, emotional distress, humiliation and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, NICOLE HUDSON, respectfully demands judgment against Defendant, FLORIDA DEPARTMENT OF CORRECTIONS, back pay, front pay in lieu of reinstatement, compensatory damages, attorneys' fees and costs, prejudgment interest and such other relief as this Court deems just and proper.

## COUNT IV – WORKER'S COMPENSATION RETALIATION

53. Plaintiff realleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 - 7, 16 - 32 of this Complaint.

54. The Plaintiff engaged in protected activity or protected expressions under the FWCA when she filed reported her injury and filed a worker's compensation claim.

55. Defendant, through its agents and employees violated the FWCA by retaliating against Plaintiff for with such retaliatory conduct described in the general allegations constituting unlawful employment practices prohibited under FWCA.

56. A non-discriminatory and non-retaliatory reason does not exist to justify Defendant's disparate and retaliatory treatment of Plaintiff.

57. As a direct, proximate and foreseeable result of Defendant's actions, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience and mental anguish, loss of enjoyment in life, loss of dignity, emotional distress, humiliation and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, NICOLE HUDSON, respectfully demands judgment against Defendant, FLORIDA DEPARTMENT OF CORRECTIONS, back pay, medical costs, compensatory damages, prejudgment interest and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

58. Plaintiff, by and through his undersigned attorney, hereby demands a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by jury in this action.

Respectfully submitted this 7th day of January, 2019.

FRANK MALATESTA, ESQUIRE
Florida Bar No.: 0097080
Malatesta Law Office
871 Venetia Bay Blvd.
Suite 235
Venice, FL 34285
(888) 501-6612
frank@malatestalawoffice.com
Staff@malatestalawoffice.com